UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 19-cr-10094-LTS |
| | ) | |
| WILLIAN TRONCOSO DE LOS SANTOS, | ) | |
| a/k/a WILLIAN TRONCOSODELO, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS**

The Defendant, Mr. Willian Troncoso de los Santos (hereinafter, "Defendant" or "Mr. Troncoso"), through undersigned Counsel, respectfully moves this Court, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, to suppress from the use in evidence any and all statements he made to law enforcement agents on March 11, 2019. As grounds, the statements were obtained in violation of <u>Miranda v. Arizona</u> and her Fifth Amendment right against self-incrimination.

**I. FACTS**

On March 11, 2019, at 8:49PM, a task force comprised of agents of the Diplomatic Security Service, Homeland Security Investigations, and Massachusetts State Police executed an arrest of Mr. Troncoso in Logan International Airport upon his disembarking a plane. An arrest warrant had been previously issued by the U.S. District Court for the District of Massachusetts as a result of an investigation beginning in October 2017. Special Agent Fisher, a member of the task force, told Mr. Troncoso that he had a warrant for his arrested and placed him in handcuffs. The task force transported Mr. Troncoso to the closest Massachusetts State Police barracks in a Massachusetts State Police cruiser.

Before any member of the task force asked Mr. Troncoso any question, he indicated that he wanted a lawyer. Special Agent Fisher told Mr. Troncoso that he had been arrested and charged with making false statements in his naturalization proceedings. He expressed confusion over the charges, and Special Agent Afonoso, who had previously interviewed Mr. Troncoso on more than one (1) occasion, laid out the factual allegations of the charge. Mr. Troncoso then stated that he forgot and that he did not realize he had to disclose the arrests during his naturalization interview. Special Agent Afonso then read Mr. Troncoso his rights in English. Mr. Troncoso requested that the rights be read to him in Spanish, and he was allowed to read the Spanish Advisement of Rights form. Mr. Troncoso confirmed that he understood his rights. Special Agent Afonso read Mr. Troncoso his rights in English one (1) more time, and Mr. Troncoso again confirmed that he understood his rights. Mr. Troncoso renewed his request for a lawyer. He was then only asked routine booking questions and was processed.

Mr. Troncoso remained in custody until his initial appearance before the Court on March 12, 2019. He was lodged overnight at the Brookline Police Department, where he was allowed to make a phone call. He was transferred back to the arresting task force on March 12, 2019 and brought to the U.S. District Court for the District of Massachusetts.

## II. ARGUMENT

### A. As Mr. Troncoso was subject to custodial interrogation, the protections of <u>Miranda</u> apply.

The Fifth Amendment to the U.S. Constitution protects individuals against being "compelled in any criminal case to be a witness against himself" during a custodial interrogation. <u>Miranda v. Arizona</u>, 384 U.S. 436, 467 (1996) (stating that "without proper safeguards the process of in-custody interrogation of persons suspected of accused of

crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely"). Miranda proffers four (4) concrete mandates that address these constitutional concerns, including that officers must, in clear and unequivocal terms, notify a suspect or accused individual of his or her right to remain silent and assure that this right is scrupulously honored. See U.S. v. Rosario-Cintron, 194 F. Supp. 3d 161, 167 (2016).

To determine whether an individual is in custody for Miranda purposes, the Court must evaluate the totality of the circumstances surrounding the interrogation and ask whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995). Factors to consider include: "the location of the questioning, the statements made during the interview, the presence of absence of physical constraints during the questioning, and the release of the interviewee at the end of the questioning." Rosario-Cintron, 194 F. Supp. 3d at 169. Importantly, "[n]ot all restraints on freedom of movement amount to custody for purposes of Miranda." Id. Thus, the Court must also ask "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda." Id.

A person is interrogated for Miranda purposes when she is in custody and "is subjected to either express questioning or it's functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Therefore, interrogation includes "any words or actions on the part of the police…that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id.

Here, there is no question that Mr. Troncoso was in police custody. A task force of Diplomatic Security Service, Homeland Security Investigations, and Massachusetts State Police executed an arrest warrant for him upon his arrival to Logan International Airport. He was placed into handcuffs and transported from the airport to the Massachusetts State Police barracks in a Massachusetts State Police cruiser. Considering the totality of the circumstances, a reasonable person in Mr. Troncoso's situation would not have felt free to leave. See Rosario-Cintron, 194 F. Supp. 3d at 169. First, Mr, Troncoso had been placed under arrest pursuant to the arrest warrant that the officers had upon their arrival at Logan International Airport. Furthermore, the interview took place in the Massachusetts State Police barracks in East Boston, MA.

Mr. Troncoso was also subject to interrogation. See Innis, 446 U.S. at 301. Special Agent Fisher told Mr. Troncoso that he was under arrest for making false statements in his naturalization proceedings. Mr. Troncoso told him that he was confused, and then Special Agent Afonso, who had previously interviewed Mr. Troncoso on various occasions, explained all of the factual allegations of the charges. Special Agent Afonso told Mr. Troncoso that he had completed his Form N-400, Application for Naturalization, in March of 2017 and was later arrested in Revere, MA in October 2017, a subject that had been previously discussed between them in an interview. Special Agent Afonso went on to explain that Mr. Troncoso did not change any of the answers on his form in his interview. Special Agent Afonso knew that his explanations were likely to elicit incriminating statements, especially in consideration of the fact that he had previously interviewed Mr. Troncoso with respect to some of the allegations. See Innis, 446 U.S. at 302; Rosario-Cintron, 194 F. Supp. 3d at 173-74. As Mr. Troncoso was

subjected to custodial interrogation, he fell under the protections afforded by <u>Miranda</u>, had the right to counsel, and have this right scrupulously honored.

**B. Mr. Troncoso unambiguously invoked his right to counsel.**

Pursuant to <u>Miranda</u>, once an individual expresses that he wants an attorney, which may occur at any time before or during questioning and in any manner, questioning must cease until a lawyer is present. <u>See</u> <u>Miranda</u>, 384 U.S. at 474. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." <u>Id.</u> at 475. In <u>Davis v. United States</u>, the Supreme Court held that one must invoke their right to counsel unambiguously, which means that the individual must state with sufficient clarity that she desires to have an attorney present in a manner that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994).

Applying the <u>Davis</u> standard to this case, Mr. Troncoso unambiguously invoked his right to counsel. This is not a case in which a request for counsel was "marred by ambiguity or equivocation." <u>U.S. v. Oquendo-Rivas</u>, 750 F.3d 12, 19 (1st Cir. 2014). Mr. Troncoso indicated clearly that he wanted an attorney before questioning even began at the Massachusetts State Police barracks. Mr. Troncoso's statement was all that was necessary to invoke his right and compel the officers to cease all questioning.

**C. Given that Mr. Troncoso was interrogated after he invoked his right to counsel, any statements that he made must be suppressed.**

As previously explained, interrogation for <u>Miranda</u> purposes both includes "express questioning" as well as "its functional equivalent" which is "reasonably likely to

elicit an incriminating response." <u>Innis</u>, 446 U.S. at 301; see also <u>U.S. v. Padilla</u>, 387 F.3d 1087, 1092-93 (9th Cir. 2004) (finding that an officer's statement to a suspect that it was his last chance to cooperate in the investigation constituted interrogation for *Miranda* purposes). In the custodial interrogation context, when one unambiguously invokes his right to counsel, the interrogating officers must cease all questioning. <u>See</u> <u>Miranda</u>, 384 U.S. at 475 (holding that, "[i]f the individual states he wants an attorney, the interrogation must cease until an attorney is present."). The right to counsel differentiates from the right to silence in this manner; "[u]nlike an ambiguous request for counsel, after which questioning must invariably cease until a lawyer is provided, an invocation of the right to remain silent does not automatically bar the resumption of questioning at a later time." <u>Oquendo-Rivas</u>, 750 F.3d at 17.

Questioning should have ceased immediately when Mr. Troncoso told Special Agent Fisher he wanted an attorney. Questioning of Mr. Troncoso should never have even began because he unambiguously told Special Agent Fisher that he wanted an attorney prior to any questioning. Instead, Special Agent Fisher and Special Agent Afonso proceeded to tell Mr. Troncoso the charge for which he was arrested as well as the underlying factual allegations. Special Agent Afonso in describing the underlying factual allegations, knew that he was likely to elicit a response because he had previously interviewed Mr. Troncoso on more than one (1) occasion, even previously discussing some of the facts involved. His statements serve as the functional equivalent to express questions, constitute interrogation under <u>Miranda</u>, and violated Mr. Troncoso's right to counsel. <u>See</u> <u>Innis</u>, at 301; <u>see</u> <u>also</u> <u>Padilla</u>, at 1092-93. Therefore, all statements made after the invocation of his right to counsel must be suppressed.

# III. CONCLUSION

For the reasons discussed above, Mr. Troncoso was the subject of custodial interrogation and thus enjoyed constitutional protections under <u>Miranda</u>. Mr. Troncoso clearly and unambiguously invoked his right to counsel, which was violated when the Special Agents proceeded to question him. As such, Mr. Troncoso asks that all his statements made to the task force on March 11, 2019 be suppressed and held inadmissible for use at trial.

Respectfully Submitted,
WILLIAN TRONCOSO DE LOS SANTOS
By his attorney,

<u>/s/ Eduardo Masferrer</u>
Eduardo Masferrer
Masferrer & Associates, P.C.
45 Bromfield St., 5th Floor
Boston, MA 02108

Dated: February 21, 2020

(617) 531-0135
BBO# 644623